IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

M-EDGE INTERNATIONAL          *
CORPORATION,
                 Plaintiff    *

           vs.                *    CIVIL ACTION NO. MJG-14-3627

LIFEWORKS TECHNOLOGY          *
GROUP LLC,
                 Defendant    *

*      *      *      *      *      *      *      *      *

MEMORANDUM AND ORDER RE: SUMMARY JUDGMENT

The Court has before it Defendant Lifeworks' Motion for
Summary Judgment of Non-Infringement and Renewed Motion to
Strike Portions of the Malguarnera Expert Report [ECF No. 112]
and the materials submitted relating thereto.  The Court has
considered the materials and has had the benefit of the
arguments of counsel.


I.   INTRODUCTION

Plaintiff M-Edge International Corporation ("M-Edge") sues
Defendant Lifeworks Technology Group LLC ("Lifeworks") for
infringement of United States Patent No. 8,887,910 "Low Profile
Protective Cover Configurable as a Stand" ("the '910 Patent").

By the instant motion, Lifeworks seeks summary judgment of
non-infringement of the claims of the '910 Patent and seeks to

have the Court strike the doctrine of equivalents ("DOE")
portions of M-Edge's expert report.


II.   SUMMARY JUDGMENT STANDARD

A motion for summary judgment shall be granted if the
pleadings and supporting documents "show[] that there is no
genuine dispute as to any material fact and the movant is
entitled to judgment as a matter of law."  Fed. R. Civ. P.
56(a).

The well-established principles pertinent to summary
judgment motions can be distilled to a simple statement:  The
Court may look at the evidence presented in regard to a motion
for summary judgment through the non-movant's rose-colored
glasses, but must view it realistically.  After so doing, the
essential question is whether a reasonable fact finder could
return a verdict for the non-movant or whether the movant would,
at trial, be entitled to judgment as a matter of law.  See,
e.g., Celotex Corp. v. Catrett, 477 U.S. 317, 322-323 (1986);
Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986);
Shealy v. Winston, 929 F.2d 1009, 1012 (4th Cir. 1991).  Thus,
in order to defeat a motion for summary judgment, "the party
opposing the motion must present evidence of specific facts from
which the finder of fact could reasonably find for him or her."

Mackey v. Shalala, 43 F. Supp. 2d 559, 564 (D. Md. 1999)
(emphasis added).

When evaluating a motion for summary judgment, the Court
must bear in mind that the "summary judgment procedure is
properly regarded not as a disfavored procedural shortcut, but
rather as an integral part of the Federal Rules as a whole,
which are designed 'to secure the just, speedy and inexpensive
determination of every action.'" Celotex, 477 U.S. at 327
(quoting Rule 1 of the Federal Rules of Civil Procedure).


III. INFRINGEMENT

A determination of patent infringement requires a two-step
analysis. Akzo Nobel Coatings, Inc. v. Dow Chem. Co., 811 F.3d
1334, 1339 (Fed. Cir. 2016). First, the court construes the
asserted claims, and second, it compares the properly construed
claims to the accused product. Id. Step one, claim
construction, is a question of law. Markman v. Westview
Instruments, Inc., 52 F.3d 967, 970-71 (Fed. Cir. 1995)(en
banc), aff'd, 517 U.S. 370 (1996). Step two, comparison of the
asserted claims to the accused device, requires a determination
that every claim limitation or its equivalent be found in the
accused device. Warner-Jenkinson Co. v. Hilton Davis Chem. Co.,
520 U.S. 17, 29 (1997).

Whether there is infringement, either literally or under the doctrine of equivalents, is a question of fact. Akzo, 811 F.3d at 1339. "As such, it is amenable to summary judgment when no reasonable factfinder could find that the accused product contains every claim limitation or its equivalent." Id.

## A.   Literal infringement

"To establish literal infringement, every limitation set forth in a claim must be found in an accused product, exactly." Advanced Steel Recovery, LLC v. X-Body Equip., Inc., 808 F.3d 1313, 1319 (Fed. Cir. 2015)(quoting Southwall Techs., Inc. v. Cardinal IG Co., 54 F.3d 1570, 1575 (Fed. Cir. 1995)).

## B.   Infringement by the Doctrine of Equivalents

### 1.   The Doctrine

Where literal infringement of a claim element is not found, infringement under the doctrine of equivalents ("DOE") may be found where the "accused product or process contain[s] elements identical or equivalent to each claimed element of the patented invention." Warner-Jenkinson, 520 U.S. at 40.

"Each element contained in a patent claim is deemed material to defining the scope of the patented invention, and thus the doctrine of equivalents must be applied to individual

elements of the claim, not to the invention as a whole." Id. at
29.  An element is equivalently present in an accused device if
there are only minor or insubstantial differences while the
essential functionality is retained.  Sage Products, Inc. v.
Devon Indus., Inc., 126 F.3d 1420, 1423, 1424 (Fed. Cir. 1997).
One way to determine whether differences are insubstantial is to
show equivalence under the function-way-result test, i.e., "an
element in the accused device is equivalent to a claim
limitation if it performs substantially the same function in
substantially the same way to obtain substantially the same
result." Voda v. Cordis Corp., 536 F.3d 1311, 1326 (Fed. Cir.
2008).  An equivalence determination is normally reserved for a
factfinder.  Sage, 126 F.3d at 1423.


          2.   May M-Edge Assert the DOE?

     Lifeworks contends that the Court should preclude M-Edge
from asserting infringement by means of the DOE.

     Rule 804.1 of the Rules of the United States District Court
for the District of Maryland ("Local Rules") requires disclosure
of "[w]hether each limitation of each asserted claim is alleged
to be literally present or present under the doctrine of
equivalents."  Moreover, the Scheduling Order, issued January

20, 2015, required an Initial Disclosure of Infringement

Contentions to be filed within 30 days that stated:

> Whether each limitation of each
> asserted claim is alleged to be literally
> present or present under the doctrine of
> equivalents in the Accused Instrumentality;

Scheduling Order C.1.e., ECF No. 17.

Except with regard to a limitation of Claim 3 not here at

issue,[1] M-Edge's compliance with the Order consisted of generally

stating that it might rely on the DOE if it turned out that it

had to do so.  Its Initial Disclosure [ECF No. 19] states:

> To the extent the Defendant contends
> that a claim limitation in claims 1, 2, and
> 6 is not literally present in an Accused
> Product, Plaintiff contends that such
> limitation is met by the doctrine of
> equivalents.

Initial Infringement Contentions 3, ECF No. 19.

---

[1]    The claim charts stated as to Claim 3:

> An anti-slip pad formed as an elongated
> pad extending substantially perpendicularly
> to a longitudinal axis formed by the
> articulable back would function in the same
> way by holding the electronic device and
> holding sheet in the manner pictured above
> with the exterior rear cover angled from the
> middle rear cover.  Accordingly, the product
> infringes claim 3 at least under doctrine of
> equivalents.

Initial Infringement Contentions, ECF No. 19, Exs. A-E at 8, and
Claim Chart, ECF No. 22.

On May 23, 2016, M-Edge served its expert report that stated:

> To the extent that the fact finder finds that in order to literally infringe, the holding sheet cannot consist of four separate corner pieces, then this limitation is infringed under the doctrine of equivalents. The holding sheet in the Accused Products performs substantially the same function (holding the electronic device) in substantially the same way (using elastic bands that lie in the same plane and apply a force towards the center of the device) to obtain substantially the same result (to make it easier for the user to install his or her device, to avoid covering the electronic elements of the electronic device, to allow devices of various sizes to be utilized by a single case, and to allow the case to have a low-profile) as the claim limitation.

Malguarnera Expert Report ¶ 62, Def.'s Mot. Ex. H, ECF No. 112-11.

This statement expressly disclosed that M-Edge intended to rely upon the DOE in regard to a specified limitation of the asserted claims and further stated the basis upon which it would rely for its DOE assertion.

The local patent rules "are designed to require the parties to crystallize their theories of the case early in the litigation so as to prevent the shifting sands approach to legal argument." Changzhou Kaidi Elec. Co. v. Okin Am., Inc., 112 F. Supp. 3d 330, 332 (D. Md. 2015). The rules "seek to balance the

right to develop new information in discovery with the need for
certainty as to legal theories." Paice LLC v. Hyundai Motor
Corp., Civil No. WDQ-12-499, 2014 WL 3725652, at *3 (D. Md. July
24, 2014) (quoting O2 Micro Int'l Ltd. v. Monolithic Power Sys.,
Inc., 467 F.3d 1355, 1366 (Fed. Cir. 2006)).  As such, the rules
serve as tools to ensure that theories of infringement and
invalidity are provided early enough to permit adequate
preparation for trial.  Id. (citing O2 Micro, 467 F.3d at 1365-
66).

    M-Edge may have been in literal, albeit minimal, compliance
with the Scheduling Order and Local Rule DOE disclosure
requirement with its essentially meaningless "placeholder"
statement.  M-Edge was, by no means, in compliance with the
spirit of the Rule and Order.[2]  The parties may debate whether
Lifeworks should have sought a more specific DOE disclosure by
motion or through discovery.  However, the Court finds that the
appropriate course of action is to determine whether Lifeworks
has suffered any substantial harm by virtue of M-Edge's actions
and, if so, provide for any appropriate remedy.

    Lifeworks seeks a sanction against M-Edge that, in the
context of the instant case, would essentially constitute a

---

[2]    Rather than seek to amend its disclosure to provide more
detail after the Claim Construction decision was issued on
February 16, 2016, it provided that detail in its expert report
on May 23, 2016.

default judgment.[3]  Lifeworks has not shown any prejudice resulting from the delay in M-Edge's disclosure that cannot be remedied at this time if, indeed, any remedy is needed.  Since the M-Edge expert report was served in May of last year, Lifeworks was on notice of M-Edge's detailed DOE contention regarding the "sheet or mat" limitation of the claims at issue and the alleged factual basis for that contention.  Lifeworks has taken the deposition of the M-Edge expert witness and may seek leave to conduct any further discovery that may be appropriate.

The Court will not prohibit M-Edge from seeking to rely upon the DOE as set forth in its expert report.  Nor will the Court strike any portion of Dr. Malguarnera's expert report.[4]

IV.  <u>DISCUSSION</u>

The '910 Patent "relates generally to a protective casing or cover for an electronic device having a display, the protective casing or cover having a very low profile that can be

---

[3]   As discussed herein, it does not appear that M-Edge can prove literal infringement as to the existence of a sheet or mat.

[4]   However, the Court is not herein addressing, or ruling upon, the content of testimony that Dr. Malguarnera (or any other expert witness) may present at trial.  The Court may well limit the extent to which the respective expert witnesses may provide opinion testimony, for example, as to their opinions regarding whether there is infringement by virtue of the DOE.

unfolded to be configured as a stand for the electronic device."
'910 Patent 1:6-10.

The invention is a "novel mounting system with bands" that
can be used with tablets of various sizes.  Opp'n 1, ECF No.
115.  Sample embodiments are demonstrated in figures 3, 9, and
10.



An M-Edge Folio is a representative product practicing the '910 Patent.



The Lifeworks' Club Jacket is a representative accused product.[5]



A.   Claims Asserted

M-Edge asserts infringement of Independent Claim 1, Dependent Claims 2 and 3 (that include the limitations of Claim 1 by reference), and Independent Claim 6.

Lifeworks contends that M-Edge cannot prove that an accused device meets certain of the limitations of these claims.

---

[5]   See Stipulation, ECF No. 85, agreeing that if the Club Jacket structure is found to infringe any of the claims 1 to 3 and 6 of the '910 Patent, then the 13 accused Lifeworks' styles would also infringe the same claims.

1.    Claims 1, 2 and 3

The limitations in these claims as to which Lifeworks seeks summary judgment are highlighted herein:

Independent Claim 1:

A protective cover for an electronic device comprising:

a front cover;

a rear cover including a middle rear cover, an exterior rear cover, and a folding portion that connects the middle rear cover to the exterior rear cover;

an articulable back that connects the rear cover to the front cover;

a holding sheet that forms a plane and is attached to an inner surface of the exterior rear cover and is not attached to the middle rear cover, the holding sheet having openings formed in the plane and located at corners of the holding sheet to form bands, the bands configured to attach to corners of the electronic device for securing the electronic device to the protective cover; and

an anti-slip pad attached to an inner surface of the front cover.

'910 Patent 6:52-67.

2.    Claim 6

The limitations in Claim 6 as to which Lifeworks seeks summary judgment are highlighted herein:

Independent Claim 6:

12

An electronic device casing comprising:

a front cover sheet;

a rear cover sheet including a middle
section, an exterior section, and a hinge
portion that connects the middle section to
the exterior section of the rear cover
sheet, the front cover and the rear cover
having inner surfaces that face each other
when the electronic device casing is in a
closed state;

a spine portion that connects the rear cover
sheet to the front cover sheet;

[a]n elastic flat holding mat that forms a plane
and is attached to an inner surface of the
exterior section of the rear cover sheet and
is not attached to the middle section of the
rear cover sheet, the holding mat having
openings formed in the plane and located at
corners of the holding mat, the openings
configured to pull over corners of the electronic
device so that the openings engage with the
corners of the electronic device for securing
the electronic device to the casing; and

an anti-slip pad attached to the inner
surface of the front cover sheet.

'910 Patent 7:17-37.


      3.   Limitations at Issue

In its claim construction [ECF No. 71], the Court stated

that "in all claims, the words 'sheet' and 'mat' have the same

meaning."   Therefore, for purposes of the instant motion, the

limitations at issue with regard to all asserted claims are:

    a.    A holding sheet/mat,

    b.    Forms a plane,

    c.    Has openings formed in the plane,

    d.    To form bands[6] or configured to pull over corners of the electronic device[7],

    e.    For securing the electronic device to the protective cover[8] or casing[9].

    B.    <u>Infringement</u>

        1.    <u>The Holding Sheet Limitation</u>

            a.    <u>Literal Infringement</u>

Lifeworks contends that its "four separate and disconnected corner bands" are not "a holding sheet/mat." Def.'s Mot. Mem. 12, 19, ECF No. 112-1.  The Court agrees that, literally, the accused device does not have a holding sheet/mat.  Rather, what the accused device has in lieu of a sheet/mat, is what can be referred to as a four-corner combination layout ("the Four Corner Combination") that – according to M-Edge - functions as if it were a sheet or mat.

The Court stated, in its claim construction, ECF No. 71 at 6:

---

[6]    Claims 1, 2, and 3.
[7]    Claim 6.
[8]    Claims 1, 2, and 3.
[9]    Claim 6.

> The Court does not find that the claim
> should be construed as limited to a holding
> sheet that is a single piece of material.
> Indeed, not only is this restriction absent
> from the claim itself but the disclosure
> includes an embodiment, one of three, in
> which the holding sheet "is made of two
> different layers." '910 Patent 6:32-33.

As disclosed in the '910 Patent, there can be a structure that is a sheet/mat consisting of more than one piece of material.  However, such a structure must have the essential quality of a sheet/mat.  That is, a relatively broad continuous flat surface.  <u>See, e.g.</u>, Oxford English Dictionary definition, sheet: "A broad flat piece of material," or "An extensive unbroken surface area of something"(available at https://en.oxforddictionaries.com/definition/us/sheet). Illustrations of a sheet/mat consisting of more than one piece of material would include a multi-layer structure as disclosed in the '910 patent or a common form of clipboard made up of strips with different woods:



The Court, therefore, concludes that no reasonable jury could find that the accused device literally has a sheet/mat as required by the claims at issue.

        b.   Infringement by means of the DOE

The Court determines[10] that a reasonable jury could – but by no means must – find that the Four Corner Combination in the accused device performs substantially the same function as the claimed holding sheet/mat in substantially the same way to obtain substantially the same result.  The jury may reasonably find that the sheet/mat element of the claim is equivalently present in the accused device because there are only minor or insubstantial differences while the essential functionality is retained.

Thus, the Court concludes that a reasonable jury could find, by means of the DOE, that the accused device meets the sheet/mat claim limitation.

---

[10]   The Court is basing this determination upon a possibly reasonable finding of the function/way/result comparison.  The Court is not relying upon Dr. Malguarnera's conclusion that there is infringement by equivalence.  That conclusory opinion may not be admissible in evidence.

i.    Prosecution History Estoppel

Prosecution history estoppel "hold[s] the inventor to the representations made during the application process and to the inferences that may reasonably be drawn from the amendment." Id. at 737-38.  See, e.g., Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co., 535 U.S. 722, 740 (2002) (holding that it would be unfair to allow a patentee to use the DOE to recapture patent scope that had been voluntarily surrendered in order to acquire the patent).  The presumption that the patentee has surrendered an equivalent may be rebutted.  Id. at 741.

Lifeworks states that "during prosecution M-Edge went to great lengths to emphasize that its invention contemplates a planar structural surface. M-Edge specifically distinguished its alleged "holding sheet/mat" of its `910 invention over the prior art, i.e., Diebel Pub. No. US 2012/0037523 A1.)." Def.'s Mot. Mem. 41, ECF No. 112-1.  Diebel disclosed a "Case for Electronic Tablet" that can be described as a sleeve fitting over the case.



Lifeworks states that "by narrowly amending the claim limitations – 'a holding sheet' (Claim 1) and 'an elastic flat holding mat' (Claim 6) -- to require that they each 'form(s) a plane,'" and by arguing to the PTO that the prior art failed to disclose a "holding sheet [and mat] ha[ving] the structure of a plane" as specifically claimed in amended claims 1 and 6, <u>id.</u> at 41-42 (quoting Ex. B., May 23, 2014 "Amendment Under 37 C.F.R. § 1.111," pgs. 6-7, 13-16, ECF No. 112-5), M-Edge is

> estopped from attempting to recapture the surrendered breadth of a "holding sheet/mat" not having a two-dimensional, planar structure or planar surface by virtue of having made a narrowing amendment and argument to distinguish the `910 patent over Diebel. M-Edge is not entitled to recapture any "holding sheet(s)/mat(s)" not having a two dimensional, planar structure or planar surface under the doctrine of equivalents.

<u>Id.</u> at 42 (footnote omitted, emphasis removed).

That may be, but in the instant case, M-Edge contends that Lifeworks' Four Corner Combination <u>is</u>, <u>in fact</u>, the equivalent of a sheet/mat that forms a planar structure.  Therefore, M-Edge is not estopped from asserting infringement by means of the DOE.

## ii.  <u>Ensnarement</u>

In <u>Tate Access Floors, Inc. v. Interface Architectural Res., Inc.</u>, 279 F.3d 1357 (Fed. Cir. 2002), the United States Court of Appeals for the Federal Circuit stated, "the doctrine

of equivalents is an equitable doctrine and it would not be equitable to allow a patentee to claim a scope of equivalents encompassing material that had been previously disclosed by someone else, or that had been previously disclosed in others' earlier disclosures."  279 F.3d at 1367.

Lifeworks contends that if the Four Corner Combination in its accused devices – with four separate and disconnected corner bands – were found to be the equivalent of the claimed sheet/mat, the finding "would impermissibly ensnare the prior art."  Def.'s Mot. Mem. 46, ECF No. 112-1.  In particular, Lifeworks refers to the Aluratek Universal Tablet Case.  <u>Id.</u>



The Court finds that a reasonable jury could find that the four elastic bands combination of the Aluratek device performs the same function of the claimed sheet/mat in the same way to achieve the same result and, that compared to the claimed element, there are only minor or insubstantial differences while

the essential functionality is retained.  However, the Court also finds that a reasonable jury could make the opposite finding.

There are distinctions between the accused Lifeworks' devices and the Aluratek device that a reasonable jury could find warrants a different DOE finding.  For example, in the Aluratek prior art, the elastic bands hold the electronic device directly against the supporting pad rather than against the sheet/mat (or equivalent) from which the bands are formed as in the accused devices or as shown in the '910 Patent.

On the evidence presented, the Court finds that there are genuine issues of material fact regarding whether the Aluratek prior art infringes the claims at issue by means of the DOE. Accordingly, Lifeworks is not entitled to summary judgment with regard to its ensnarement defense.  However, Lifeworks may present the defense at trial.


    2.    The Other Limitations at Issue

If, but only if, a jury were to find that the Four Corner Combination in the accused device meets the Claims 1 and 6 holding sheet/mat limitation by the DOE, it could reasonably find that the other limitations at issue are literally met.

### i.   Forms a plane

If considered as a holding sheet/mat, the Four Corner Combination could be found to <u>form</u> a plane.  The flat corners not only lie in a plane, but define the equivalent of a holding sheet/mat as a planar structure.

### ii.   Has openings formed in the plane

If considered as a holding sheet/mat that forms a plane, the Four Corner Combination could – indeed, would clearly appear to – have openings formed in the plane.

### iii. To form bands, etc.

If considered as a holding sheet/mat with openings formed in the plane, the openings in the Four Corner Combination could reasonably be found to form bands or be configured to pull over the corners of an electronic device.

### iv.   For securing the electronic device

If the Four Corner Combination is considered a holding sheet/mat with openings formed in the plane to form bands or be configured to pull over the corners of an electronic device, the function of the bands, or configuration, could reasonably be

21

found to secure the electronic device to the protective cover or

casing.


V.    CONCLUSION

      For the foregoing reasons,

           1.    Defendant Lifeworks' Motion for Summary Judgment
of Non-Infringement and Renewed Motion to Strike
Portions of the Malguarnera Expert Report [ECF
No. 112] IS DENIED.

           2.    Plaintiff shall arrange a telephone conference,
to be held by March 22, 2017, regarding the
scheduling of further proceedings and trial.


      SO ORDERED, on Wednesday, March 8, 2017.


                                          /s/
                                    Marvin J. Garbis
                     United States District Judge